UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ADAM JOHNSON, on behalf
of himself and all others
similarly situated,

       Plaintiff,

v.                            **MEMORANDUM OF LAW & ORDER**
                                Civil File No. 10-4880 (MJD/JJK)

U.S. BANK NATIONAL ASSOCIATION,

       Defendant.

---

Thomas J. Lyons, Lyons Law Firm, P.A., Counsel for Plaintiff.

Vernle C. Durocher, Jr., Andrew Peters, Kenneth J. Connelly, and Brian L. Vander Pol, Dorsey & Whitney LLP, Counsel for Defendant.

---

## I.    INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(3). [Docket No. 40] The Court heard oral argument on November 10, 2011. For the reasons that follow, the Court denies Plaintiff's motion.

## II.    BACKGROUND

### A.    Factual Background

1

Defendant U.S. Bank National Association ("U.S. Bank") operates an ATM at its branch location at 2690 Snelling Avenue North, Roseville, Minnesota. Under the Electronic Funds Transfer Act ("EFTA"), ATM operators who impose a fee on any consumer must post a notice of the fee in a prominent and conspicuous place on the exterior of its ATMs ("on-machine notice"). 15 U.S.C. § 1693b(d)(3)(B)(i). The Roseville ATM charges a fee to non-U.S. Bank customers.

On October 21, 2009, internal U.S. Bank auditors conducted a Retail Quality Assurance Review ("RQA"). Defendant interprets the result of that RQA to indicate that the ATM's on-machine notice was present at that time. On February 14, 2010, U.S. Bank customer service manager Margaret French conducted a Customer Convenience Assessment ("CCA") on the Roseville ATM and avers that she verified that it displayed the on-machine notice.

On September 23, 2010, Plaintiff Adam Johnson used the above-mentioned ATM. At that time, it did not have the on-machine fee notice. U.S. Bank charged Johnson, a non-U.S. Bank customer, a $3.00 fee for withdrawing $40.00 from the ATM. Before Johnson withdrew the money and incurred the fee, he saw an on-screen notice that appeared and informed him that the ATM would charge the fee. He read that the on-screen notice gave him the option to either accept the

transaction fee and proceed with his transaction, or decline the transaction fee and have his card returned. Despite reading the on-screen notice, he decided to complete the transaction anyway. He did not notify anyone at U.S. Bank that the on-machine notice was missing.

U.S. Bank admits that a November 1, 2010 internal audit revealed that this ATM did not have the on-machine notice. Defendant claims that it immediately ordered a new fee notice sticker and attached it to the ATM by, at the latest, November 5, 2010.

### B. Procedural History

On December 14, 2010, Plaintiff Adam Johnson filed a class action lawsuit against U.S. Bancorp d/b/a/ U.S. Bank, National Association, in this Court. Based on the parties' stipulation, on February 15, 2011, Johnson filed an Amended Complaint to correct the defendant's name to U.S. Bank National Association. [Docket No. 9] The Amended Complaint asserts Count One: Violation of Electronic Funds Transfer Act and Regulation E. Johnson seeks actual and statutory damages, an order enjoining Defendant from continuing to violate 15 U.S.C. § 1693b(d)(3)(C) and 12 C.F.R. § 205.15(e), and attorneys' fees and costs.

Johnson now seeks to certify a class of:

> All persons who, from December 14, 2009 to December 14, 2010, were improperly charged a $3.00 transaction fee for the use of Defendant's ATM at:
> > U.S. Bank
> > 2690 Snelling Avenue North
> > Roseville, MN 55113

U.S. Bank charged more than 1,000 transaction fees between December 14, 2009, and December 14, 2010.

On October 27, 2011, Plaintiff filed a Motion to Strike the Affidavit of Margaret French. [Docket No. 81]

## III.   DISCUSSION

### A.   Motion to Strike the Affidavit of Margaret French

#### 1.   Procedural Posture

On August 22, 2011, Defendant submitted the affidavit of Margaret French in connection with its opposition to Plaintiff's motion to certify the class. [Docket No. 47] From January 1, 2009, to May 2011, French was the customer service manager for U.S. Bank's Roseville branch. In her affidavit, French discusses the types of audits U.S. Bank conducts for its ATMs. She recounts the types of audits done during the putative class period and the results of those audits with regard to the existence of the on-machine notice, which include some audits she personally conducted and other audits that she did not personally conduct. For

4

example, she avers that, on February 14, 2010, she verified that the ATM displayed the required on-machine notice.

Plaintiff has now produced photographs that purport to be taken of Defendant's Roseville ATM on February 9, 2010, by Jeremy Krueger and to show a lack of the on-machine notice.

### 2.     Merits of the Motion to Strike

Plaintiff asserts that the French Affidavit should be stricken because it is irrelevant to class certification; because paragraphs 3 and 8 of the affidavit, regarding the RQAs, lack personal knowledge and contain inadmissible hearsay; and because paragraph 4 of French's affidavit, in which she avers that she personally verified that the ATM contained the required on-machine notice on February 14, 2010, is not credible because it is impeached by photographs of the Roseville ATM taken on February 9, 2010, showing that the sticker is not present.

The Court denies Plaintiff's motion to strike. The French Affidavit is relevant to Defendant's arguments regarding practicality of class certification. The business records exception to the hearsay rule, Fed. R. Evid. 803(6), applies to French's reference to the audits. Additionally, she has personal experience both conducting and interpreting the audit forms for U.S. Bank, so she is

qualified to opine on the import of the lack of mention of the on-machine notice on the audit forms. Finally, whether French's credibility is lacking based on the Krueger photographs goes to the weight, not the admissibility of her affidavit. In any case, the Court does not rely on the French Affidavit in its decision to deny Plaintiff's motion.

### B.     Class Action Standard

The class action serves to conserve the resources of the court and the parties by permitting an issue that may affect every class member to be litigated in an economical fashion. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155 (1979). Whether an action should be certified as a class action is governed by Rule 23 of the Federal Rules of Civil Procedure.

> To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b). The Rule 23(a) requirements for class certification are: (1) the putative class is so numerous that it makes joinder of all members impractical; (2) questions of law or fact are common to the class; (3) the class representatives' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005) (citing Fed. R. Civ. P. 23(a)) (footnote and other citations omitted).

Rule 23(b)(3) allows a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011).

### C. Background on the Electronic Funds Transfer Act

The "primary purpose" of EFTA is to protect consumer rights by providing a "framework establishing rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."  15 U.S.C. § 1693(b).

EFTA requires ATM operators who impose a fee to provide notice that a fee will be assessed and the amount of the fee.  15 U.S.C. § 1693b(d)(3)(A).  Operators must provide two forms of notice to consumers: (1) on-machine notice in a "prominent and conspicuous location" on the ATM; and (2) on-screen notice

of the fee after the consumer has initiated the transaction but before being irrevocably committed to completing the transaction. § 1693(d)(3)(B)(i)–(ii). EFTA prohibits operators from charging a fee unless the on-machine and on-screen notice requirements are met and the consumer expressly chooses to continue with the transaction. § 1693b(d)(3)(C).

> The damages provision of EFTA provides:
>
> [A]ny person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer in the amount equal to the sum of:
>
> (1) any actual damage sustained by such consumer as a result of such failure;
>
> (2)(A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or
>
> (B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery . . . in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1693m(a).

    **D.**    **Rule 23(a) Requirements**

The Court need not address all four Rule 23(a) requirements for class certification, because Plaintiff clearly does not meet the third requirement – that the class representative's claims or defenses are typical of the claims or defenses of the class – or the fourth requirement – that the class representative will fairly and adequately protect the interests of the class.

### 1. Typicality

Plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is generally met "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." Paxton v. Union Nat'l Bank, 688 F.2d 552, 561–62 (8th Cir. 1982) (citations omitted).

Here, Plaintiff cannot satisfy typicality. Actual damages under EFTA require a showing of detrimental reliance. Because Plaintiff admits he saw the on-screen notice yet decided to proceed with the transaction anyway, Plaintiff did not detrimentally rely on the absence of the on-machine notice. See, e.g., Muchnik v. Union Credit Bank, No. 09-21132-CIV, 2009 WL 3012811, at *1 (S.D. Fla. Sept. 16, 2009) (dismissing plaintiff's claim for actual damages under EFTA

when plaintiff elected to continue with the ATM transaction after receiving the on-screen notice because "[h]er election to accept the $3.50 transaction fee breaks the causal chain between [the bank]'s alleged EFTA violation (failing to post physical notice) and the plaintiff's loss (payment of the $3.50 fee)"). Johnson's inability to recover actual damages makes his claims atypical of the class because the claims of the putative class involve both actual and statutory damages.

The majority of EFTA cases require detrimental reliance in order to recover actual damages. See, e.g., Voeks v. Pilot Travel Ctrs., 560 F. Supp. 2d 718, 724 (E.D. Wis. 2008) ("[A] plaintiff must plead and prove detrimental reliance to establish actual damages under [EFTA]."); Brown v. Bank of Am., N.A., 457 F. Supp. 2d 82, 90 (D. Mass. 2006) (concluding that on-screen click-through notice broke the causal link between the on-machine notice violation and plaintiff's alleged actual damages).

Plaintiff argues that EFTA's notice and improper fee provisions constitute distinct violations. Compare 15 U.S.C. § 1693b(d)(3)(B) (requiring on-machine and on-screen notice) with § 1693b(d)(3)(C) (prohibiting charging a fee if notice provisions are not followed). Plaintiff then asserts that the award of actual damages for violation of the improper fee provision, § 1693b(d)(3)(C), does not

require detrimental reliance on the lack of the on-machine notice. He points to three cases decided by the same magistrate judge, who interpreted the phrase "as a result of," in the EFTA actual damages provision "any actual damage sustained by such consumer as a result of such failure," to only require a showing that the plaintiff was injured because the bank charged an improper fee (i.e., one imposed without proper notice), not a showing of detrimental reliance on the absence of the on-machine notice. See Savrnoch v. First Am. Bankcard, Inc., No. 07-C-0241, 2007 WL 3171302, at *4 (E.D. Wis. Oct. 26, 2007); Mayotte v. Associated Bank, N.A., No. 07-C-0033, 2007 WL 2358646, at *5 (E.D. Wis. Aug. 17, 2007); Voeks v. Wal-Mart Stores, Inc., No. 07-C-0030, 2007 WL 2358645, at *5 (E.D. Wis. Aug. 17, 2007).

The Court respectfully disagrees with the trio of cases cited by Plaintiff. These opinions conflate liability, which is based on imposition of a fee after failure to give proper notice, and actual damages. See Voeks v. Pilot Travel Centers, 560 F. Supp. 2d at 723–25 (rejecting Voeks v. Wal-Mart Stores and Mayotte v. Bank of America because they conflated liability, which is based on imposition of a fee after failure to give proper notice, and actual damages caused by the violation); Stiltz v. Global Cash Network, Inc., No. 10 CV 1998, 2010 WL

3975588, at *5 (N.D. Ill. Oct. 7, 2010) ("Plaintiff fails to acknowledge that a majority of courts—including another court in the Eastern District of Wisconsin—have come to the opposite conclusion [and decided that detrimental reliance is required to recover actual damages].").

Johnson also points to the treble damages provision in the Real Estate Settlement Procedures Act ("RESPA"), which some courts hold entitles wronged consumers to three times the entire fee paid under the contract without any showing of actual injury.  See 12 U.S.C. § 2607(d)(2) ("Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."); Gomez v. Wells Fargo Bank N.A., Civil No. 09-1818 (JRT/FLN), 2010 WL 3463436, at *5 (D. Minn. Aug. 30, 2010) (holding that court can award treble damages "even in the absence of monetary injury in the form of an overcharge").

Johnson's analogy to RESPA is not applicable because Gomez discusses a RESPA provision that provides treble damages in the amount of three times the settlement charge paid – there is no mention of "actual damage" incurred "as a

result of" the defendant's violation of RESPA.  Additionally, the RESPA damages provision demonstrates that, if Congress had intended that EFTA plaintiffs always recover some multiple of the improperly charged fees, regardless of reliance, it could have written the damages provision of EFTA to explicitly provide for the award of the fees charged with improper notice.  And, in a sense, Congress did write such a provision, by permitting EFTA plaintiffs to seek <u>statutory</u> damages.

The Court concludes that the plain language of EFTA's actual damage provision requires that the plaintiff prove detrimental reliance.  Johnson admits that he read the on-screen notice and, fully aware that he would be charged a fee if he proceeded, decided to withdraw money from Defendant's ATM.  He cannot show detrimental reliance.  Therefore, his claims and defenses are not typical of the class he seeks to certify, which includes members who seek actual damages.

    **2.**    **Adequacy**

"The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  <u>Paxton</u>, 688 F.2d at 562-63 (citations omitted).  "[A] class

representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (citation and footnote omitted).

Johnson is an inadequate class representative because he suffered no actual injury – he admits that he read the on-screen warning before deciding to proceed with the transaction and incur the $3.00 fee. Therefore, he lacks any meaningful incentive to pursue the claims of absent class members who did not see an on-screen notice and might have a colorable claim for actual damages.

## IV. CONCLUSION

Because Plaintiff fails to meet the third or fourth prongs of the Rule 23(a) test, the Court need not analyze the Rule 23(b)(3) requirements. Plaintiff's proposed class is inappropriate for class certification.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

> Plaintiff's Motion for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(3) [Docket No. 40] is **DENIED**.

Dated: December 15, 2011    s/ Michael J. Davis
                            Michael J. Davis
                            Chief Judge
                            United States District Court